We will hear argument first this morning in Case 2601, Cameron v. EMW Women's Surgical Center. Mr. Kuhn. Mr. Chief Justice, and may it please the Court, two days after learning that another state official had stopped defending Kentucky's House Bill 454, the Attorney General moved to intervene so that the Commonwealth could exhaust all appeals in defense of its law. The Sixth Circuit kept the Attorney General out of court, and it made three fundamental errors in doing so. First, the panel overlooked that the Attorney General simply sought to pick up where the Secretary had left off in this litigation. More to the point, the Attorney General, on behalf of the Commonwealth, merely accepted a handoff from another state official to exhaust all appeals. Second, the panel refused to consider Kentucky's sovereign interests in enforcing and defending its law. To be clear, the panel did not merely weigh factors to arrive at its timeliness holding. It affirmatively treated Kentucky's sovereign interests as irrelevant to that inquiry. And third, the panel expected the Attorney General to have preemptively intervened while the Secretary was vigorously defending House Bill 454 with the Attorney General's office as his counsel. That is contrary to what this Court said in McDonald, and if accepted more than that, it would lead to a flood of protective motions to intervene. Before discussing the intervention issue further, let me address the jurisdictional argument that has been raised. This argument overlooks that the Attorney General is here in court today on behalf of the Commonwealth. This Court's case law instructs that acting for a state is a distinct capacity. Because everyone agrees that the Attorney General did not participate in that capacity in district court, he is not jurisdictionally barred from doing so now. Even still, the Attorney General could not have appealed the district court's judgment. He had been dismissed from the case without prejudice, he was not named in the district court's judgment, and he had preserved his ability to participate in any appeal and to benefit from any favorable result on appeal. I welcome the Court's questions. Mr. Kuhn, there isn't much law for appellate intervention. So what do we rely on? Do we rely on Rule 24, which doesn't really apply? What would be your strongest case that we should have a basis for this intervention that's not in the rules of appellate procedure? So the best case is the Schofield case that's discussed in our briefing. And what Schofield says is that even though Rule 24 is not technically applicable in appellate courts, it serves as essentially a helpful analogy. So I think Rule 24 is perhaps the starting point of what we're looking at. And our position is not that intervention in district courts under Our point is that when we have a handoff from one state official to another only to exhaust all appeals, it doesn't make sense to draw a firm line between district court intervention and appellate intervention. And that's why we think there's such a strong analogy in this case to McDonald, where Ms. McDonald moved to intervene as soon as she learned that her interests were unprotected. And this court said that that was timely, even though it was post-judgment. But you still, we need a standard for timeliness. We need a basis for, I think we're reviewing this on abuse of discretion standards. We need a basis for saying that the Sixth Circuit abused its discretion. And I simply want to know if Rule 24 does not apply on its own So I think it is a general equitable standard. I don't take my friend on the other side to argue that we are categorically prohibited from intervening in an appellate court. So I think there is a general equitable standard. As we pointed out at page 27 of the Blue Brief, this court on occasion allows intervention on its own docket. And it does so in circumstances that are very similar to what we have here, where another party had been representing the real party in interest. Up to that point, the party that had been in court declined to seek certiorari. And this court has on occasion granted a motion to intervene on this docket to allow the filing of a petition for certiorari. Thank you. You noted, Counsel, that the Attorney General intervened on behalf of the Commonwealth of Kentucky. I don't quite understand if that's different than simply representing the Commonwealth of Kentucky as its counsel, or if the Attorney General is intervening in his own capacity as distinct from the Commonwealth. Mr. Chief Justice, we followed the roadmap this court laid in Hollingsworth, which is to say that a state has to have the power to act through its agent. And so our position is that we are here as the agent of Kentucky. And I think that's consistent with how Hollingsworth talked about it. A state has the power to act only through its agent. I'll point this Arizona came here for the state. And the court pointed out in discussing it that the Arizona Attorney General, quote, fits the bill of someone who can stand in for the state. I also think it's consistent with what this court said in Bethune Hill. In that case, the Virginia House of Delegates did not have the authority that we have here, but the court talked about it as standing in for the state. And I think that's what we're doing here. And I read Bethune Hill to tell us that when we are here on behalf of the state, that is a distinct representational capacity that is separate and apart from whatever institutional interest the Attorney General may have. Is it the normal, if you take a typical run-of-the-mind case and the Attorney General is representing any state entity, do they appear on behalf of the Department of Social Services or whatever it is? Or is there no separate designation of that on behalf sort? I think it's different if we are retained as counsel, the Attorney General's office, as we were by the Secretary for the Sixth Circuit. We just appeared as counsel for the for the Commonwealth. We note that it's often through a Commonwealth X-Rail Attorney General action. You look at the cases we cited at pages 4 and 5 of our Blue Brief, they are Commonwealth X-Rail Attorney General on behalf of the Commonwealth. And so when we're appearing for another state official, we're just counsel. And from a Kentucky law perspective, I think that makes sense because the Attorney General is not just a lawyer for the Commonwealth. Kentucky law tells us he is the chief law officer of the Commonwealth. For that reason, there's a state law reason as well as a federal law reason of why we came in A.G. Cameron on behalf of the Commonwealth. Counsel, I understand that Virginia law permits the Attorney General to step in but doesn't require it to, and it permits state agencies like the Department of State to hire its own attorneys or hire the Attorney General. In this case, I understand that four of the lawyers who are now part of the Attorney General's office were working for the Department of State, but not as part of the Attorney General's office. The Secretary had hired his or her own attorneys, correct? That is correct, Justice Sotomayor. So when you were sued in the suit originally, you were sued as the Attorney General, correct? That's correct, as someone who can enforce the challenge law. And you said, we can't. And you signed a stipulation dismissing yourself and saying that you would abide by the decision of the Secretary of State, its litigation, and abide by whatever judgment was entered in this case, would be bound by any final judgment in the action. Is that correct? That is correct. There are a couple qualifications to that, but yes, generally. Generally. You didn't appeal the judgment, correct? That's correct. Why would we call it an abuse of discretion for a court of appeals, after it's rendered its judgment, to say, we don't really care what has happened in the political arena. We don't want to be dragged into it. You agreed to be bound by this judgment. You didn't appeal, even though you were a party. Are you telling me you're now willing to waive the sovereign immunity of the state? Because that's what it sounds like. Because if you're coming in as yourself, you were here and left, you agreed to be bound by whatever the Secretary of State did, under what theory of law would we be able to say that the Sixth Circuit abused its discretion in just respecting the very stipulation you signed? Justice Sotomayor, let me start with the stipulation, and then I want to step back and talk about Bethune-Hill and state sovereignty. But with respect to the stipulation, it was entered into, in our capacity, as someone who can enforce House Bill 454. We were sued on an ex parte young theory at pages 40 and 41 of the red brief. EMW acknowledges that the Commonwealth was not before the district court. That acknowledgement, I think, overcomes the stipulation, because the stipulation… Well, it couldn't have been before the district court. The state has sovereign immunity, correct? So the state, under no circumstance, even now on appeal, unless it's willing to waive sovereignty, and you haven't told me if you are or aren't, or whether you have or haven't, I don't think you put that before the Sixth Circuit. So I go back to my question, how do we say it abused its discretion in saying that an individual party who had an opportunity to be in the litigation and chose to get out and chose to bind itself to the decisions of the Secretary of State, how can we say the Sixth Circuit abused its discretion in honoring that commitment by the Attorney General? Justice Sotomayor, we don't think that the Commonwealth is a party to the stipulation because they had not been brought before the court. They could have tried to sue the Commonwealth, and at that point, we would have been able to invoke sovereign immunity, but we never got that chance. If I can just engage with you a bit… It would have been almost actionable for them to have sued the state, wouldn't it? I mean, it would have been in bad faith. Everyone knows you can't sue a state. You can sue the officers who enforce the law, correct? That's correct. They bought it. Now, by the way, you said you had no authority or duty to enforce the provisions as enacted, but now you come back and give a contrary representation that you can enforce the provisions by defending them, correct? That's correct. And so why wouldn't that be judicial estoppel? So one of the key elements of judicial estoppel is that a court has to accept your argument. The previous Attorney General, we admit, took the position that he did not have the authority to enforce House Bill 454. The district court did not rule on that issue. If you look at the stipulation, the stipulation notes that we agreed not to enforce House Bill 454. And so the stipulation, I think, overcomes any suggestion that the district court ruled on that issue. And if I can point you to two particular provisions of the stipulation, that even if the court were to say that the Commonwealth is bound by it, I think that it protects exactly what we're doing here. We reserved all rights to participate in this action and any appeals arising out of this action. And we preserved our ability to benefit from any favorable result on appeal. So those two provisions work together that even if the Attorney General... But you didn't appeal on time. That's correct, but this court's general rule is that only a party or one who becomes a party can file an appeal. You could have filed an appeal if you lost, couldn't you? You reserved the right to appeal if you won. We reserved all rights, claims, and defenses. But you didn't file a notice of appeal on time. We did not file a notice of appeal, Justice Sotomayor. We had been dismissed from the case without prejudice. We were not mentioned in the judgment. Counsel, can I ask you the stipulation concerning being bound by a final judgment? What do you understand final judgment to mean? It seems to me it can mean a number of things. The district court ruling is a final judgment, for example, for purposes of appeal. On the other hand, there are obviously subsequent proceedings that could take place in appeal, obviously, and so on, that would undermine the finality of the judgment. When you sign a stipulation to be bound by a final judgment, what are you being bound by? The language is that we're bound by the final judgment in this matter, disposing of all claims and the exhaustion of any and all appeals that may arise in this action. So we get the benefit of any favorable result on appeal. So the notion would be that, yes, we're agreeing to be bound, but we're preserving our rights to come back in. I'll note that although we disagree with most of what the Sixth Circuit did, if you look at Joint Appendix 229, the Sixth Circuit appears to have agreed with what I'm saying here, where they noted that we had preserved all claims and rights relating to whether we can participate on appeal. So I think that's one thing, reading the stipulation, that the Sixth Circuit in fact got right. And if I can step back and talk about Bethune Hill, this court has told us that federal courts should respect how a state structures itself when defending its laws. Kentucky's put together a system where, as Justice Sotomayor mentioned, state officials oftentimes provide the front-line defense of state laws, and this makes sense because they have particular expertise in enforcing these laws. But Kentucky, unlike Virginia had done in Bethune Hill, said it's not good enough for the state that one official gets to make all litigation decisions for the state. What we as Kentuckians want is a fail-safe. A fail-safe that if a state official who enforces state law says, I'm not going to appeal any further, Kentucky's Attorney General can come in for the Commonwealth and say, no, the Commonwealth wants to go farther. This envisions a system of… Mr. Kuhn, I'm sorry, complete your sentence. This envisions a system of state officials working together to defend Kentucky's law, which is what happened here. Could I assume for a moment that the Attorney General's office could have appealed? Okay, just let's assume with me that it could have, because it was bound by the judgment, because of the stipulation, because of the combination of the two, because of any number of other things. Just assume with me that the Attorney General's office could have appealed. In that case, would the petitioner's jurisdictional argument be correct? No, Justice Kagan, I don't think it would, and let me explain why. Let's assume instead of putting the power to defend Kentucky on the Attorney General, the General Assembly of Kentucky had given it to itself. If that had happened and everything had stayed the same in your hypothetical, this court would not be having a jurisdictional discussion then, because everyone would understand that the Attorney General in his enforcement capacity, who in your hypothetical had gone to final judgment, is different than the General Assembly coming in on behalf of the Commonwealth. I guess I'm not sure I understand the answer, so let me reframe the question a little bit. Take our decision in Torres, which is the case where we make clear that the notice of appeal requirement is jurisdictional and impose a very harsh rule saying that if you don't appeal, even if it's not your fault, you're out of luck. Do you think if Torres had gone further and Mr. Torres had filed a motion to intervene, that we would have said, oh sure, go ahead and intervene in the suit? Would the court have said that? Our position is that we do not think a notice of appeal for a party who could have appealed but failed to do so, we don't think a motion to intervene in the ensuing appeal that the party failed to take, we don't think that would be proper because of how this court talked about jurisdiction in Torres. But my point is that if you had separated the power to represent the state from the Attorney General, no one would think there's a jurisdictional problem. The only reason we're having a jurisdictional discussion here is because two hats were put on the same official. Two hats, the language this court used in Bethune-Hill. And this court told us in Bethune-Hill that representing a state as the agent of the state is distinct from your institutional… But that's just contesting the premise, which is that the Attorney General could have appealed. If I understand your argument, it's the Attorney General couldn't have appealed because he would have been doing so in a different capacity than he had taken in the first place. That's not my position. My position is that, stepping outside of your hypothetical, because of the way the stipulation was written, the Attorney General could have appealed because it's consistent with him reserving his rights to claims and rights to participate in any subsequent appeal and to benefit from any favorable ruling. I apologize for pressing on this. I'm maybe just not understanding, and it might be my fault entirely. But if you agree that in the main run of cases, in a Torres-type case, where the person could have appealed, didn't appeal, if you agree that it would then be improper to grant intervention rights, which I take you to agree. Okay, so that's a very simple case. And it seems to me that the petitioners would say that's exactly what happened here because the AG could have appealed, didn't, and now is seeking intervention. And if we assume the point that the AG could have appealed, why doesn't the same result follow? Because this Court has told us that different capacities should be treated… This Court's words are different legal personages. And, for example, in Bethune Hill, the fact that the Virginia House of Delegates participated in that case to defend its institutional interests did not mean that it also brought any power it had to appeal on behalf of the state. The Court said the record was silent about that issue. The record here is silent as to the Attorney General participating as an agent of the state. Could you have intervened on behalf of the state, qua state, recognizing, as Justice Sotomayor pointed out, that that would have waived the state's sovereign immunity? We wouldn't be even having this discussion if you had intervened on behalf of Kentucky with Kentucky being the main party and you being the lawyer for the state. Could you have done that? I think that is essentially what we did. The reason we came in on behalf of the Commonwealth was because this Court told us in Hollingsworth that states have to act through their agents. So we identified ourselves as the agent of Kentucky, and we came in on behalf of the Commonwealth, just as Hollingsworth envisioned. This Court noted in Hollingsworth that state attorneys general are typically the people who are tasked to defend the sovereign interest, to speak for the people of Kentucky. So, yes, I would agree with that, that we could have come in as the Commonwealth, which is essentially what we've done here. We were just following this Court's direction from Hollingsworth by identifying ourselves as the agent of Kentucky. So are you answering that? Kentucky's sovereign immunity? So I don't think this Court has ever said that when we participate as an agent of the Commonwealth or an agent of the state, that that is in fact a waiver of sovereign immunity. If you're not a party, you can't be the agent of anybody. You can only be an agent of a party. So I agree that we're an agent of the party, and to the extent that that does create a waiver of sovereign immunity, I think it's a narrow waiver related to whether House Bill 454 is constitutional. It's not unprecedented for states to come in and defend their laws. For example, in Maine v. Taylor. If you had stayed in this litigation, would you have been defending this law? What other capacity would you have served if you had stayed in the litigation when you were sued? You were being sued as an agent of the state, correct? No, we were being sued because we can enforce House Bill 454 under Ex Parte Young. If they had sued us as an agent of the state, we would have been able to invoke sovereign immunity. Everybody agrees that Kentucky was not there in district court. Pages 40 and 41 of the red brief. That concession being made, it cannot be the case that Kentucky is jurisdictionally prohibited from coming in. The only reason we're having this discussion is because the Attorney General wears two hats, just like the state officials who wore two hats in Karcher, just like the hats that were discussed in Bender. This is not a novel thing. We followed the court's direction in Bethune Hill to bring us here. If I can, in closing, just point out that after reading the Sixth Circuit's decision, I think one would be forgiven for not understanding the sovereign interests that are at stake. We've had a discussion about state sovereignty now, and that fact went unmentioned in the Court of Appeals ruling. It wasn't mentioned anywhere. In fact, in footnote four of the opinion, they said they were not going to consider the Attorney General's ability to represent the state. We think that that was a relevant factor that the Court of Appeals should have considered. Keep in mind that we had been representing the Secretary before the Sixth Circuit. We weren't sitting on the sidelines. We stood up in the Sixth Circuit and argued in defense of House Bill 454. The Secretary informed the Attorney General's office seven days after that decision came down that he would not appeal further. Two days later, we filed a 20-page motion to intervene on behalf of the Commonwealth. That's how we titled it in both our intro and our conclusion. We said that we were on behalf of the Commonwealth more than a dozen times in the motion, but that just went unrepresented. I think the only way we can understand the Sixth Circuit's decision is making any sense is to treat us as if we were bringing to bear a new, previously unrepresented interest. We were not doing that. The Secretary had been defending Kentucky's interests, and we had been counsel for some of that period. So when we stepped forward, we sought to defend the same interests as the real party in interest that the Secretary had been defending all along. Under those circumstances, it was a handoff of litigation authority to go the distance. And I'll point out that the Secretary did not oppose our motion to intervene. The Secretary said, I'm not going to appeal further, but he let us go. He said, I'm not going to oppose you going further. This is an example of Kentucky's unique system of defending its sovereign interests working as it was meant to. State officials working together. Once a state official says no further, we come in for the Commonwealth and say we want to go the distance. There are no further questions. Justice Thomas. If I understand your argument, was it up to me? I'm sorry. Yes. Okay. Correctly, Mr. Kuhn. It really does all come down to this two hats theory. Is that correct? I think we've got two arguments on jurisdiction. The two hats theory and the argument that even if you disagree with us on two hats, the Attorney General could not have appealed because of the stipulation. Okay. If you assume that the Attorney General could have appealed, then it comes down to the two hats theory. That's correct. If you assume our second argument is wrong, we're resting on our first. Just one question about the two hats theory, which I guess I'm just not sure I understand. It seems to me that the Secretary's role in this entire litigation pretty much proves that the two hats theory doesn't work. Because your theory is that the Attorney General was stepping in to replace the Secretary, who until that point was representing the state's interest. But the Secretary was sued in his capacity as a state official who could enforce state law. So doesn't it really come down to the same thing? The Secretary was sued because he could enforce state law. He was obviously representing the state's interests. Nobody else was doing that. So the two seem completely intertwined to me. And the Secretary's role in the litigation prior to the Attorney General's intervention motion proves that, doesn't it? No, it doesn't. The Secretary has the power as a matter of Kentucky law to defend Kentucky law when challenged. So the fact that he can take actions consistent with Kentucky's interest in defending its law does not mean that he has the power to stand in as the agent of Kentucky. Only the Attorney General under Kentucky Revised Statute 15.020 has that power. So I think the distinction to be drawn, Justice Kagan, is that yes, the Secretary took actions consistent with Kentucky's interests by defending Kentucky law. When he said no further, that's when we stepped in, which is what we think Ms. McDonald did in this Court's McDonald decision, and that's why we're consistent with that. Justice Gorsuch? Counsel, do you agree that abuse of discretion is a proper standard of review for this Court analyzing the Sixth Circuit decision? So as I mentioned with Justice Thomas earlier, this Court has not ruled on— I understand that. That's why I'm asking the question. So we have not contested that point because of what this Court said in NAACP v. New York. And if the position is that Rule 24 is a helpful analogy, I think it's a helpful analogy in that circumstance. But we think this is an obvious abuse of discretion because we were not treated as— And then second question briefly. You rest heavily on the state's sovereignty interests here and citing Bethune-Hill to us quite a lot. Where do those interests run out? When would it be proper for a court of appeals under an abuse of discretion standard to deny intervention by a state entity? If we had sought rehearing like we did, attended our rehearing petition, but we had filed it after the deadline, I think that a court of appeals would be within its discretion to say, no, you're delaying this litigation. If we had come in and said, court of appeals, please remand this case to the district court to let us put on more facts, I think that the court would be within its discretion to deny a state's intervention. But our point is where we moved to intervene and did not delay this case by even a day and where we merely sought to pick up where the secretary left off and to exhaust all appeals in that circumstance, we think that is an abuse of discretion. This is Cameron. Does the same kind of rule apply in private litigation? So suppose a private plaintiff sues a private defendant under a state tort law. The private defendant argues that the state tort law is unconstitutional, and the court on appeal rules that the tort law is unconstitutional. And the private plaintiff chooses not to seek in bank or cert. Can a state AG intervene in that circumstance, even though the private plaintiff has chosen not to seek in bank or cert to argue that the state tort law is in fact constitutional? I think this court told us in Hollingsworth that a private party defending state law is just a different matter than a state official who has sworn an oath to defend Kentucky's constitution who was popularly elected. So I think the state in that circumstance... The state tort law in that circumstance will be declared unconstitutional, and I think by saying it's different, you're saying the state AG in that case could not seek in bank or cert, even though the state tort law had been declared unconstitutional. Our position is not that he could not do so, but that it would not be as easy of an argument in that circumstance. I think it matters that we have a handoff from one state official to another, both of whom are sworn to defend Kentucky law. I think a lot of the things I'm saying today would be consistent with the hypothetical that you're talking about, but I think we're perhaps a half step beyond that, and this is a much easier case than the one you've hypothesized. Thank you. Justice Barrett? I have a question that's related to the question Justice Thomas started out with, and that Justice Gorsuch just followed up on. Justice Thomas asked you where we get the authority to even impose these standards on the courts of appeal, and I think we've treated it as the lower court having some inherent authority just pursuant to the judicial power to manage its docket, and I heard you saying that we have the authority to make sure that the rules that the courts adopt and apply are not abuses of their discretion, and that would be true whether we're talking about pre-judgment or post-judgment intervention, and our role in that regard is pretty limited. I have a question specifically about how we should think about that relationship in the context of a post-judgment intervention motion, because we've also asserted that we have some inherent supervisory authority over the courts of appeal, and in the post-judgment intervention context, we might also have some concern that wouldn't be present in the pre-judgment context about a court of appeals trying to evade our review. How, if at all, should we think about that factoring into the analysis? It's more than just equity to the litigants, arguably, so does that play a role at all? I think it does, and if this court wants to look to the day opinion from the Ninth Circuit that dealt with that, that was when Hawaii came in, and the court noted that Hawaii had come in later than if they would have let a private litigant, but the court talked about its discomfort with saying that a sovereign state could not seek in-bank relief and could not seek certiorari from this court. So I read they to basically create a sovereignty tiebreaker when a state comes in to seek further review. But that's sovereignty. I mean, you've emphasized sovereignty, and I get that, but my question was a little bit different because it's one that might apply even in the context of private parties, which Justice Kavanaugh was positing. So I think so, and as you're thinking about the private parties issue, footnote 16 of this court's McDonald opinion talks about how its analysis would apply outside of the representational context. Ms. McDonald there had been represented by the non-named class members. The court gave two more examples of cases that would apply post-judgment in the representational context, but then it cited further cases and said outside of the representational context, we think post-judgment intervention could be allowed, and cited two cases and said this court's McDonald decision is consistent with those other two cases to the extent the party moves to intervene before any appellate deadlines have run. So I think the post-judgment part of it and insulating a decision from further review, especially for a sovereign state, is something that matters quite a bit to the analysis that we hope the court adopts. Thank you. Thank you, counsel. Ms. Colby Molinas. Thank you, Mr. Chief Justice, and may it please the court. The Attorney General agreed to be bound by final judgment and chose not to appeal it. Because he was expressly bound by the judgment, he had a right to appeal, but he had to do so within the 30-day timeframe set by statute. He cannot now avoid his jurisdictional failure by seeking to intervene instead. The Attorney General does not directly dispute that one who is bound by judgment and fails to appeal cannot intervene. Instead, he offers two responses, both insufficient. First, he argues that he is exempt from jurisdictional rules because he is wearing a different hat on appeal than he wore when he agreed to be bound. But the Attorney General was sued and bound in his official capacity, and the fact that a party has more than one job responsibility does not allow it to evade a jurisdictional bar. Second, the Attorney General argues that by reserving all rights, claims, and defenses relating to whether he is a proper party, he reserved the right to participate in the appeal. But you can only reserve the rights that are available to you, and there is no right to join an appeal after failing to satisfy the jurisdictional rules for doing so. However, even if intervention were not jurisdictionally barred, the court of appeals should be affirmed. Intervention is not a revolving door that allows a party to agree to be bound, procure their dismissal, fail to appeal, and then gain reentry to the suit after the court of appeals has ruled. Moreover, where the Attorney General was on notice of his interest in preserving the third-party standing argument nearly a year before the court of appeals ruled and did nothing about it, the court did not abuse its discretion in denying post-judgment intervention when it was based primarily on that argument. Finally, it is not disrespectful to the Attorney General's and Kentucky's sovereign interest to hold the Attorney General to his decision not to appeal, particularly when he can make the same arguments he made in his intervention motion through Rule 60B. I welcome the Court's questions, but will otherwise turn to the jurisdictional argument first. Just one brief question. In your introductory comments, you did not refer to Eisenstein and how you would work around Eisenstein if you think the Attorney General was a party. I don't think Eisenstein changes the Attorney General's obligation to appeal here because Eisenstein recognized that what this Court held in Devlin, and what this Court held in Devlin and in the three cases that it cited in Devlin, is that when a person participates in the proceedings before the district court in a manner that results in them being bound, then they have a right to appeal. Of course, in Eisenstein, the Court was talking specifically about the False Claims Act context, where there is a statute that says the United States can't participate unless it first intervenes. If this Court in Eisenstein had held that the United States was a party, even though it had not done what Congress had required it to do to become a party, then that would have been undermining the statutory interest. But here, and as Devlin recognized, the situation is different. It's context-specific. And here you have the Attorney General who moved for and obtained a court order expressly binding him to the final judgment. That final judgment was then entered by the same district court that originally bound him to it. But what was the effect of the order?  The Attorney General was dismissed as a named defendant, but not completely dismissed, because obviously when someone is completely dismissed and they have no more relation to the suit, they would be bound. Can you give me an example of another case where a party was dismissed but also remained a party? I'm not sure that this Court has ever considered such a case. I do know that it's routine in the courts of appeals for people who are bound by judgment, even if they're not currently named defendants, to be able to appeal, but I don't think there's any case this Court has ever considered. Do you know of any cases outside of class actions, for example? Where one who is bound by judgment but not a named party? Yes, we've cited cases in the red brief and in the amici federal courts have cited decisions from the courts of appeals, I'm sorry if that was your question, but from the courts of appeals, where people who are expressly bound by the judgment but not named as defendants have a right to appeal. And finally, the Sixth Circuit seemed to rely primarily, not on the jurisdictional issue, but on intervention, that the reason it would not grant intervention was because of prejudice. And it based that prejudice to you on an argument, a third-party standing argument, that the Attorney General was raising. Can you give me an example of a case where a party wants to intervene, is prevented from doing so based on prejudice because that party wanted to raise a jurisdictional argument? Well, Your Honor, at that time in the Sixth Circuit, that argument was not a jurisdictional. The third-party standing argument was not jurisdictional. But I'm not aware of any case in which someone has been denied intervention to raise a jurisdictional argument, but that wasn't, under Sixth Circuit precedent, that wasn't a jurisdictional argument. So what's the prejudice? The prejudice was that the argument had been waived. The Secretary had not made the argument about third-party standing on appeal. It had been part of the District Court judgment. The District Court had held that the plaintiffs had third-party standing. The Secretary chose not to appeal it. And that was clear as of July 2019, nearly a year before the Court of Appeals ruled. The Secretary filed their brief and did not make the third-party standing argument. Yet throughout this time, the Attorney General did nothing to try to intervene and make the argument. He was on notice as of July 2019 that if someone else didn't make the third-party standing argument before the Sixth Circuit ruled, it would be waived. And yet even when he entered an appearance on behalf of the Secretary, he entered an appearance after briefing had been completed. All he did was show up at argument. But yet he didn't request supplemental briefing on the third-party standing question. He didn't file a 28-J about this court's cert grant in June medical. He didn't ask the Sixth Circuit to stay proceedings and at least wait for June medical so that there could be supplemental briefing after that. He was aware that the argument had been waived and did nothing to try to raise it before the Court of Appeals ruled. So it was not an abuse of discretion for the Sixth Circuit under those circumstances to hold that on a party based virtually their entire intervention motion on an argument that they could have moved to intervene and made beforehand and didn't. It was not an abuse of discretion to hold that post-judgment intervention in that context was untimely and prejudicial. Thank you. Thank you. Moving to the jurisdictional argument, this court has... Maybe I should ask a question. Thank you. As I understand this, and you better correct me, please, because I'm not certain I do. Look, there have been a lot of party changes. First the Republicans are in, then the Democrats are in, and they have different views on an abortion statute. So what happened was that, first of all, the clinics sued to say Kentucky's abortion statute is unconstitutional. And they're defended. It was defended by a person who doesn't feel that strongly about it, and he says, No, I can't. The Secretary of State says, I can't enforce this. And that's it. But eventually when they get around to deciding it, the lower court says, Yeah, it is unconstitutional. And then the Court of Appeals says, Yeah, it is unconstitutional. At that point, for the first time, we have an attorney general who thinks it's a pretty good statute. He wants to defend it. So two days after he learns that nobody's going to defend it, he comes in and says, Let's me defend it. And that's okay under Kentucky law, apparently. Nobody says it isn't. And so if there's no prejudice to anybody, and I can't see where there is, why can't he just come in and defend the law? How does he defend it? One, he asks for rehearing. It's still timely. And then two, if they say no, he comes to this court. Now, he may lose on both those. And he may lose for the reasons that you say. But I don't see why he can't. If Kentucky law allows him to make the argument, why can't he make the argument? Well, Your Honor, that would be the case if we were talking about a true stranger or outsider to the case. There were four defendants who were sued originally in this case. The attorney general, rather than defend or rather than take a back seat, moved for and obtained a court order expressly binding him to the judgment. The secretary did defend. It's not that the statute wasn't defended. He defended on the ground I'm the wrong person. No, that's not the grounds on which the secretary. The secretary defended the suit all the way up to his decision based on defending the constitutionality of the statute. The attorney general is the one who originally said he had no enforcement authority, but now admits that he does. The secretary was vigorously defended through the court of appeals decision. The attorney general, it is well settled in this court, stands in the shoes of his predecessor. It is well settled that one who is bound, one, a successor in office is bound by the stipulations made by and judgments against their predecessors. It doesn't matter that there's been a political party change. So here we're not talking about a run-of-the-mill intervention case where the attorney general had not been involved, someone else had backed out, and then the attorney general wants to come in. I thought, was I not right then? I'm wrong. Before, there was still something to do. The Sixth Circuit says this is unconstitutional. And somebody could have filed a defendant, a motion for rehearing, and then they could have tried to come here. But the secretary of state said, I'm not going to do that because there had been a political party change. And so at that point, the attorney general says, well, two days ago, he says, nobody's going to defend this, so I better. Is that happened? I'm totally wrong. That the secretary did make that decision not to continue the defense. Well, because I write my statement. In that the secretary, there was a change in the administration? I don't want to just repeat it again. Did you take it in or shall I repeat it again? I believe that it is correct that the secretary decided not to appeal and the attorney general then moved to intervene. The point is that the attorney general is a former named defendant in the suit. He's not a stranger. He already is bound by the judgment and never appealed. What I read in the thing that he signed is he said he would be bound by a final, what is it called, a final decision? Final judgment, paragraph 3b. Final judgment of what? Of the district court. It says final judgment of the district court. I mean, is there a final judgment? I thought perhaps you could, if you had a lot of appeals to go, you know, an awful lot but occasionally a district court is reversed. And occasionally, I'm not saying it happens very often, but even a court of appeals sometimes is reversed. And so is it a final judgment if there still are appeals to take? It is, Your Honor. In this court's decision in Melconian, the term final judgment refers to final and appealable. It is only unless you clarify a final and unappealable judgment that you are talking about a judgment that is not final until all appeals have been exhausted. So if he goes and asks them to re-hear, motion to re-hear, which is what he wants to do, then? The court would just write what you just said. No, denied. Why? Because. And then they give you a reason. I would assume the court would deny it for being jurisdictionally barred, but the court is, before that point, jurisdictionally barred from allowing him to intervene. He did not file. I thought your friend on the other side read additional language after the stipulation rebound saying subject to preservation of rights to appeal and so on and so forth. Well, he read two different provisions, and so I think it's important to clarify. Paragraph 3B, which is on page 29 of the joint appendix, is not the paragraph that binds him to final judgment. That is a separate agreement not to enforce until all appeals were exhausted. Paragraph 3D is where the attorney general agreed that he would be bound by final judgment and then says subject to any vacating or reversal of that judgment on appeal, but that just means he wasn't being bound by the judgment, the final judgment, and even if it was later changed, he would remain bound by the original judgment. Well, could you? I don't. I can look up the language again, but it seems to me it's saying he's being bound by the It's a final judgment in the same way you have to have a final judgment to appeal, but it's not necessarily the last word on the subject. But every defendant is bound by the final judgment, and then if that final judgment no longer exists, then they can't be bound by it anymore. I mean, there are other defendants in this suit. So, for example, the local prosecutor was a defendant in this suit who stayed in the case through the district court and then became bound by final judgment but opted not to appeal. If that final judgment is vacated on appeal, even though he never appealed, he would no longer be bound by it anymore, but that doesn't mean he wasn't bound by the final judgment and therefore didn't have an obligation to appeal it, and it didn't mean that he didn't lose his right to appeal when he failed to do so. Counsel, could I take you back to the original Justice Breyer question, which does have to do with the change in party? And I understand your answer that the Attorney General remains the Attorney General, and we have a lot of law saying that even though the Attorney General, the person, has changed and even the party has changed, it's still the same legal entity. And indeed, I don't take Kentucky to disagree with that. No place in its briefing does it talk about the fact that, well, once there was a Democrat and now there's a Republican, and he thinks completely different things. But there's a real-world way in which that seems to matter a lot. I mean, that creates the problem here, which is that there's nobody left defending the state's law. And I think what Justice Breyer was saying is, gosh, that would be an extremely harsh jurisdictional rule, or at least a counterintuitive rule, if it ended up in a place where nobody was there to defend Kentucky's law, even though there are significant parts of Kentucky's government that still wants its law defended. Well, Your Honor, first of all, harsh results don't change whether or not a jurisdictional rule is imposed. Of course, this Court has repeatedly recognized jurisdictional rules often result in harsh results, and those results are imposed by Congress. That doesn't mean that there can be an exception to the jurisdictional rule. But second, under Kentucky law, the Attorney General has the authority to decline to defend a statute. The Kentucky Supreme Court has held that. And that is exactly what happened when the Attorney General originally, in this case, declined to defend the statute. And it is not a violation of Kentucky's sovereign authority to hold him to that decision. As this Court recognized in Bethune-Hill, the decision not to appeal is as much an exercise of sovereign authority as the decision to appeal. It wouldn't mean if a subsequent Virginia Attorney General was to come and say, well, I would have made a different decision than the Attorney General in Bethune-Hill. That doesn't mean that this Court was violating Virginia's sovereign authority when it held that he had the authority to make the decision not to appeal. I think, if anything, the fact that different political parties might choose to exercise that sovereign authority differently calls for this Court to be neutral in the face of that differential exercise of sovereign authority. And so, again, I think what separates this case is the fact that if the Attorney General had never exercised that sovereign authority to decline to defend and to enter into a court-ordered stipulation and dismissal binding him to the judgment, then I think we would be more in the case of what Justice Breyer was describing, of a case in which the sovereign authority, the sovereign had never been given the chance, perhaps, to exercise or defend the statute, and then now it was being taken away from it. But here, the Attorney General exercised the authority he had not to defend and to agree to be bound. Another defendant chose to continue to defend, chose to appeal, saw that appeal all the way through, and then decided at that point to lay down his sword. None of that is a violation of Kentucky's sovereign interests. And so that's what I think sets this case apart and why, even if this Court is concerned about the harsh results that a jurisdictional rule might impose, this is not that case. Because this is a case in which the jurisdictional rules are being applied neutrally, as they should, to an appropriate exercise of sovereign authority. It just happens to be that a different political party, a different Attorney General of a different political party, after an election, would have exercised that authority differently. But that's always the case when a successor in office stands into the shoes of their predecessor. Counsel, I'm sorry, finish your answer. That's a good stopping point? That's a good stopping point. Okay, all right, thank you. My first question is, put aside the stipulation order. I want to press further where Justice Kagan and Justice Breyer were. Put aside the stipulation order here. Assume the Attorney General hadn't been involved initially. Would it have been proper for the Attorney General then to intervene on appeal two days after getting the notice? Would not have been jurisdictionally barred. We certainly still think there's a timeliness issue, but there would not be a jurisdictional issue if he had not been bound and failed to appeal. Okay. And then, do you give any weight, should this Court give any weight to the fact that we are dealing with a sovereign with the interests of defending a duly enacted state law along the lines Justice Kagan and Justice Breyer have articulated? Should that bear on our consideration of this case at all? I think it's certainly one of the considerations. I don't think it gets dispositive weight. And I think the D.C. Circuit in the Amador County case, I think, struck the balance appropriately where it said that it would be an abuse of discretion not to consider the fact that a sovereign is the sovereign purposes behind intervention. But it's not an abuse of discretion to fail to give them dispositive weight. And then finally, I hope, with respect to the conditions of dismissal, as I read it at any rate, the Attorney General specifically reserved rights relating to whether he's a proper party in this action and in any appeals arising out of this action. And the Attorney General obviously argues that includes the argument that he can later seek intervention, that that was expressly reserved. What do you do about that? Your Honor, he could only reserve the rights that were available to him, and we believe he had a right to appeal. Counsel, I'm sorry. Let me just intervene there. I'm sorry. But I think we agree that, absent the stipulation, one of the rights the Attorney General would have had is to seek intervention on appeal. So why wasn't that one of the reserved rights? Well, Your Honor, we don't believe that that's what the stipulation and dismissal contemplates because there is no right to intervene on appeal. His right to seek intervention on appeal is part of the bundle of rights I think we've all just agreed on that the Attorney General had and that may be particularly powerful as a sovereign. And why didn't this language adequately reserve those rights? Because if he was, and I'm not trying to resist my hypothetical, but if he was bound by the judgment, then he had to appeal, and if he didn't, he couldn't come back to the suit. If he wasn't bound by the – So the question is to ignore the reservation of rights here? Is that the argument? Well, I'm saying if he wasn't bound by the judgment, he wouldn't have needed a reservation of rights to reserve the right to seek intervention. That's not something you would need to reserve because any stranger or outsider to the action could move to intervene. That's just not the context in which the stipulation and dismissal was entered, Your Honor. Counsel, can I ask you a question about the premise of the jurisdictional argument altogether? I guess I'm struggling to see why 28 U.S.C. 2107 is the right way to think about this because it doesn't seem to me that intervention necessarily overlaps with 2107. I mean, he's not filing a notice of appeal. He's seeking to intervene. It seems like a different thing. And it might be that the fact that he signed this stipulation before might be an equitable reason or one of the considerations in this intervention calculation, the Rule 24 analog, for why the court might not let him do it. The court might say, hey, you had your chance. You signed that away. No, we're not letting you come in at this late date. But I guess I don't understand why it's jurisdictional because it seems to me that a motion to intervene is just a different way of getting before the suit. So are you aware of any other cases in which a court of appeals has treated a motion to intervene as implicating 2107 at all? Because, I mean, after all, in the language of 2107A, it just says unless notice of appeal is filed within 30 days. So presumably, even if you came in as a stranger to the suit, someone not in the Attorney General's strange two-hat position here, would anyone invoke 2107 saying, well, hey, even though you weren't a party blow and you didn't have the right to appeal, it was 30 days, and that 30 days has run. It just seems like a mismatch between what happened and 2107. So three responses. First, just to briefly point you to a case, the Tenth Circuit in Hutchinson did say that intervention cannot be used as an end run or substitute to the ordinary rules of appellate procedure. And the person who was seeking intervention there could have appealed. They didn't cite Section 2107, so I don't want to suggest that. But they did say that intervention cannot be used as a substitution or end run around the ordinary rules of appellate procedure. But second, as this court held in Torres, one who was jurisdictionally barred from achieving something directly is equally jurisdictionally barred from achieving it indirectly. The reason that this court gave in Torres for why the petitioner was jurisdictionally barred from rejoining his suit was that to allow him to do so would have been, and the term this court used, would have been the equivalent of allowing him to file an untimely notice of appeal. And because this court didn't have the authority to allow him to file an untimely notice of appeal, it couldn't allow him to achieve the result any other way, because to do so would render jurisdictional rules meaningless. But we didn't talk about intervention in Torres, correct? No, he was just asking for an equitable exception to rejoin his suit. And Mr. Kuhn said that he would not have been allowed to intervene. But maybe Mr. Kuhn was wrong about that. Maybe the way around the harshness of Torres is just to allow people who don't file their notices of appeal in time to come back and say, you should allow me to intervene. I disagree, Your Honor, because the crux of the holding in Torres was that anything that amounts to the equivalent of filing an untimely notice of appeal is as jurisdictionally barred as filing an untimely notice of appeal. So it wouldn't matter if it was asking for an equitable exception to rejoin the suit or asking for equitable intervention on appeal. Both of those are an end run around filing an untimely notice of appeal, and that's why they're jurisdictionally barred. So I don't think it would make a difference. And the fact that intervention itself requires some sort of threshold showing doesn't change the fact that it would still be granting an exception to someone who could have and didn't file their notice of appeal and yet letting them appeal anyway. So I think that at the end, it's this anti-circumvention principle. If you are jurisdictionally barred from achieving something directly, you cannot achieve it through any other means, regardless of what those means are. Otherwise, a jurisdictional rule as this Court held in Torres would be meaningless. So do you represent that if the Attorney General had, in fact, filed a notice of appeal within the 30 days that you wouldn't have contested his right to do so? I don't see on what grounds we could have, Your Honor. Well, now I'm confused. I'm trying to find you a brief where you make this jurisdictional argument. On page 15, or page rather, 8, 5, you say what it is. You say he agreed, the Attorney General, that any final judgment about the constitutionality will be binding on the Attorney General subject to any modification, reversal, or vacation of the judgments on appeal. That's what we're talking about, right? Yes. Okay. Then I see later that really they dismissed it on a different ground, namely that it was untimely. And I don't see much argument about that point, that that bars him forever. Have I missed something? Where is it argued that that's a promise? That's a promise that I won't intervene later or do anything else. I'm out of it. Whatever the district court holds, I'm out of it. That's what you're saying, I think. If you fail to appeal, you are out. That's the jurisdictional rule. Okay. So I got the argument right. Where do you discuss it in your brief? The jurisdictional argument? Yeah. The brief, it's the first argument. Okay. I got it then. I know the first argument. Yes. Okay. But they didn't reach that as a ground, did they? No. Because of this added language and so forth, what do you think of saying, look, you did it on a timeliness basis, but really there's an argument here that they're barred jurisdictionally because of this promise. Effectively, they promised not to do it. Please consider that. It would be appropriate to allow the Sixth Circuit to consider the jurisdictional argument because I agree they didn't consider it. I wanted to address the point about sovereignty and the waiver of sovereign immunity that had been raised before because I think it is very clear that we are dealing with the Attorney General, who is the party who is intervening here. First, one need only look at pages 45 to 46 of the blue brief to see that the Attorney General has cited his institutional interests. He cited the fact that he has enforcement authority under HB 454. He even cites that he is bound by the judgment as a basis for intervening. But second, every Attorney General knows the difference between moving for intervention on behalf of himself and moving to intervene for the state because when the state intervenes, it necessarily waives sovereign immunity, which is significant and irreversible. There is no such thing as essentially waiving sovereign immunity. Sovereign immunity, it must be unambiguously and expressly waived. And this Court has held that voluntary intervention is such a waiver. And that's why I think it's not just a mere technicality or formality that this case is the intervener is Attorney General Cameron, and this case is called Cameron v. EMW. The intervener here is the Attorney General. It is not the state of Kentucky. And this Court should not construe where there is ambiguity and where there is question of who the intervener is, should not construe it as the Commonwealth of Kentucky because that would be an irreversible waiver of Kentucky's sovereign immunity. And indeed, the parties in this case have not even briefed the circumstances under which the Attorney General in Kentucky can waive the Commonwealth's immunity. So I think that it's very clear that what we're dealing with here is the same party who was sued is now the party who is moving to intervene. The same party who was bound is the party who is moving to intervene. And it's not the Commonwealth of Kentucky who's moving to intervene here. And that's why the jurisdictional issue cannot be ignored. I thought he said that it could be construed as a limited waiver of sovereign immunity. Under this Court's precedent, a voluntary intervention is a waiver of sovereign immunity. It's not a limited waiver of sovereign immunity. So I don't know what that limited waiver is that he's discussing, but if the Commonwealth of Kentucky is intervening here, it has waived its sovereign immunity irreversibly. I also want to go to this hat point, Your Honor, because I think it makes just a hash of Ex parte Young and of jurisdictional rules. We sued the Attorney General because in his official capacity, there are only two capacities, official capacity and personal capacity. It doesn't matter how many job responsibilities you have. And it would make a hash of Ex parte Young if the Attorney General could say, well, with my left hand I'm exercising my authority to defend the constitutionality of state law so that with my right hand I can enforce that same law and then claim that he's two separate legal personas, one immune, one not. That would render both Ex parte Young and jurisdictional rules meaningless. Thank you, Counsel. Just one more question. In another suit, the Friedlander litigation, your client opposed the Attorney General intervening prior to a panel opinion on the basis that the Secretary adequately represented the Commonwealth. And in your papers, you said that you criticized the Attorney General's concern about rehearing and cert as speculative. Now, here you're opposing the intervention after the issuance of a panel opinion. And I wonder if that's, I mean, I'm familiar that lawyers argue in the alternative, but I wonder if that's really putting him in a catch-22. If it's prior to the opinion, the Secretary will do it. If it's after the opinion, he's waited too long. So which is it? So three responses to that briefly, Your Honor. First, we did lose the adequate representation argument in that case. He was permitted to intervene before. Second, that case actually was different because there was not the previous, the Attorney General had never been involved in that suit and had never sought their dismissal in that suit, so the question of adequate representation was slightly different in that suit. But also, at the end of the day, we would make whatever good faith arguments were available to us to oppose intervention under the circumstances, but that doesn't ever relieve the Attorney General from moving to intervene timely, and the fact that we wouldn't have consented to intervention doesn't relieve him of his obligation to move timely. Well, I think you should lose one of those, whether it's this one or that one. But I wonder why it doesn't make more sense to have the Attorney General out of the case when the Secretary is representing the state. You don't want the state speaking through two different voices. But once the Secretary is out of it, Kentucky maybe ought to be there in some form, and the Attorney General is the one that wants to intervene. Well, Your Honor, I think that intervention law incentivizes early intervention and penalizes late intervention, and there is a significant thing that happens when the Court of Appeals has ruled. I mean, intervention is as much about the Court of Appeals being able to control its docket and to control entry of new parties into the suit late in the game. Well, late in the game, yes. But here the Attorney General filed a petition for rehearing on the same date that it would have been due if the Secretary had still been in the case. So it seems a bit much to say that they were delaying the proceedings. No, I'm not arguing that. I don't think I'm arguing they were delaying the proceedings. But nevertheless, part of docket control is ensuring that you have all the parties  Well, I guess that's true, but as Justice Breyer pointed out, the situation changes a bit when the state representations are shuffled. The deck is shuffled again after an election, and the question is whether you want to preclude the state from participating in the litigation that is still ongoing in a way that doesn't delay it to deny the state any representation. It's sort of an estoppel. I mean, if you had one party's position being pressed in the case and there was another election, well, the state still stuck with what the people have rejected in the election. I don't think it was an abuse of the Court of Appeals' discretion to hold that under the circumstances that the Attorney General did wait too long to intervene. Not, again, as a delay, I'm not saying that, but that he had the opportunity to enter the case and shape the decision before the Court of Appeals ruled. So I don't think it was an abuse of the discretion for the Court of Appeals to say that waiting until after judgment is entered to try to make your arguments and to make a new argument is waiting too long. A different panel may have seen it differently, but under the abuse of discretion standard, I don't think there was an abuse there. Thank you, Justice Thomas. Justice Breyer, please. Counsel, assuming there's no jurisdictional argument, meaning that they didn't have to file a notice of appeal, Justice Breyer and I think Justice Gorsuch and Justice Barrett have all been concerned about never having given the state of Kentucky the opportunity adequately to defend this law after it was declared unconstitutional because the Secretary of State walked away from it. How do you address that concern? I don't think it's fair to characterize this case as if there was some sort of default judgment or some sort of abdication by the Secretary. The Secretary was the sole defendant who saw the case through to district court judgment and then saw it all the way through on appeal and defended it vigorously on appeal. So it's not as if the state was denied its opportunity to defend the law. That Secretary defended it all the way up until the Court of Appeals and then decided based on the decision and based on whatever other considerations not to seek extraordinary further appeals. The Attorney General, putting aside whether or not he was bound, still had the opportunity to defend earlier, had an opportunity to intervene earlier. I don't think it's disrespectful of Kentucky's sovereign interest for the Court of Appeals to have held that at this point the case has gone on too long and it's too late for someone new to join. Justice Kagan? Justice Gorsuch? Thank you, Counsel. You have rebuttal, Mr. Coon? Thank you, Mr. Chief Justice. Two quick points. I want to start with Justice Breyer's question and what the Chief Justice referred to as the deck being reshuffled. I think after the elections in 2019 and the reversal of positions with various state officials, we saw the wisdom of the way Kentucky had structured its system of government, its way of defending its sovereignty when its laws are challenged, because the reversal of one party was not good enough for Kentucky's law to go away. It took two people. It took two constitutionally elected, separately elected officials to agree not to appeal further. The governor's administration said no further, but Kentucky created that failsafe. I think the effect of the Sixth Circuit's ruling is to say to a sovereign state that you just can't structure your government that way. You cannot defend your sovereign interests the way that you want to do so. I think that is directly contrary to what this Court said in Bethune-Hill, that we respect how states structure their government. The second and final point that I want to make is to respond to some of the questions that Justice Gorsuch and the Chief Justice asked about the terms of the stipulation. This Court has told us that a non-party that agrees to be bound by a judgment is bound in accordance with the terms of his or her agreement. That's Taylor v. Sturgill. So I think that we have to look very closely at what the Attorney General agreed to in his enforcement capacity. And as the questions have pointed out, we preserved our right to benefit from any favorable result on appeal. That is in Section 3D in response to the Chief Justice's question. And we reserved our right to participate in any appeal. We reserved all claims and rights relating to whether we are a proper party. I think by reserving that, that can only be understood, to respond to Justice Gorsuch's question, as to preserve our ability to move to intervene if circumstances change, which they did. And so I think that if we're bound in accordance with the terms of our agreement, I think that we have the ability to come in and protect Kentucky's interests when it became unrepresented. If there are no further questions, I appreciate the Court's time. Thank you, Counsel. The case is submitted.